NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0222n.06
Filed:  March 29, 2005

**Nos.  03-3055, 03-3069**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| WAYNE A. GOODRUM, and<br>JAMES H. ROBINSON, | ) <br> ) <br> ) |
|     Defendants-Appellants, | ) **ON APPEAL FROM THE** <br> ) **UNITED STATES DISTRICT** |
| v. | ) **COURT FOR THE NORTHERN** <br> ) **DISTRICT OF OHIO AT** <br> ) **CLEVELAND** |
| UNITED STATES OF AMERICA, | ) |
|     Plaintiff-Appellee. | |

**BEFORE:**     **KEITH and CLAY, Circuit Judges; O'MEARA, District Judge***

**DAMON J. KEITH, Circuit Judge**.    Defendants-Appellants James H. Robinson ("Robinson") and Wayne A. Goodrum ("Goodrum") appeal their sentences following their guilty pleas to having conspired to distribute cocaine base in violation of 21 U.S.C. § 846.  The government maintains that Robinson's and Goodrum's appeals are barred by a valid waiver of appellate rights.  For the reasons set forth below, we **AFFIRM** Goodrum's and Robinson's sentences.

**I.     Procedural Background**

On May 25, 2001, the police arrested Robinson and Goodrum, along with a third defendant, John F. Williams ("Williams"), pursuant to federal arrest warrants and complaints for drug

_____

*The Honorable John Corbett O'Meara, United States District Court for the Eastern District of Michigan, sitting by designation.

trafficking. On June 13, 2001, a federal grand jury returned a three-count indictment charging all three defendants with conspiracy to distribute more than 50 grams of cocaine base (crack) in violation of 21 U.S.C. § 846 (Count 1) and two counts of distributing cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 3).

On November 14, 2001, pursuant to a written plea agreement, Goodrum entered a guilty plea to Count 1 of the indictment. As part of Goodrum's plea agreement, the government agreed to recommend a three-level reduction for substantial assistance. The following day, pursuant to a written plea agreement, Robinson entered a guilty plea to Count 1 of the indictment. As part of Robinson's plea agreement, the government agreed to recommend a two-level reduction for substantial assistance.

On December 20, 2002, the district court sentenced Goodrum to 188 months of imprisonment, followed by five years of supervised release. On the same day, the district court sentenced Robinson to 210 months of imprisonment, followed by five years of supervised release. This appeal followed.

## II.    Factual Background

On May 9, 2001, during an undercover narcotics investigation by the Akron Police Department and agents from the Drug Enforcement Administration, Goodrum and Williams sold approximately 20.9 grams of crack to an undercover Akron police officer. Two weeks later, Goodrum and Williams sold approximately 100 grams of crack to an undercover police officer. On both occasions, Robinson supplied the crack.

***Robinson***

In May of 1992, the Summit County Grand Jury indicted Robinson on one count of aggravated trafficking in cocaine, a third degree felony, in Summit County Common Pleas Court. He pleaded guilty, and on September 1, 1992, he was sentenced to one year of imprisonment. In January of 1994, the Summit County Grand Jury indicted Robinson on one count of aggravated trafficking in drugs, a first degree felony. He pleaded guilty to a lesser included offense, a third degree felony. He was sentenced to one and a half years of imprisonment. That case was subsequently terminated because Robinson was serving a federal sentence based on the same conduct. In March of 1995, a federal grand jury indicted Robinson on one count of conspiracy to distribute cocaine. He pleaded guilty and was sentenced to fifty-one months of imprisonment.

On June 13, 2001, a federal grand jury indicted Robinson in the instant case in a three-count indictment. He pleaded not guilty at the arraignment on June 21, 2001. On November 14, 2001, the government filed an Information against Robinson, alleging a prior conviction based on the 1992 and 1994 state cases. On November 15, 2001, Robinson entered into a plea agreement with the government. Pursuant to the plea agreement, Robinson withdrew his not guilty plea and pleaded guilty to a single count of conspiracy to distribute narcotics in violation of 21 U.S.C. § 846.

In the plea agreement, Robinson admitted that a factual basis existed for his guilty plea, that he had two previous "controlled substance offenses," and that he was subject to certain enhancements in the United States Sentencing Guidelines based on his career criminal offender status. The plea agreement also included a waiver of certain rights, including Robinson's right to appeal his conviction and sentence, that stated the following:

> 16. Defendant hereby waives the right to appeal his conviction and sentence herein. The defendant further waives his right to raise and/or file post-conviction

> petitions for collateral relief concerning any and all matters pertaining to the within prosecution, including but not limited to: the filing of motions, assertion of defenses, understanding of charges, voluntary nature of plea, probable cause determinations, and objections to the Court's entry of judgment and sentencing of the defendant.

J.A. at 46.

The Presentence Investigation Report ("PSR") concluded that Robinson should be classified as a career offender. On October 7, 2002, Robinson filed objections to the PSR, arguing that he should not be classified as a career offender because his prior convictions are "related cases" for purpose of the career offender guideline. After a sentencing hearing on December 20, 2002, in which Robinson argued that he should not be classified as a career offender under U.S.S.G. § 4B1.1, the district court ultimately determined that he was a career offender. The district court determined that the applicable guideline range was 210 to 262 months. Accordingly, the district court sentenced Robinson to 210 months of imprisonment, to be followed by five years of supervised release.

***Goodrum***

Goodrum entered into a plea agreement, similar to Robinson's plea agreement, that had an identical waiver of appeal clause. J.A. at 35. The district court sentenced Goodrum to more than fifteen years of imprisonment due to an enhancement of eight levels as a career offender. At his sentencing, Goodrum alleged that the government promised him it would not file for the career offender enhancement if he cooperated with the government's investigation.

## III.    Discussion

Robinson argues that his sentence was improper because the district court erred in sentencing him as a career offender under U.S.S.G. § 4B1.1. Robinson also argues that his counsel's failure

to move for a downward departure under U.S.S.G. § 4A1.3 constituted ineffective assistance of counsel. Goodrum argues that he did not enter a knowing and voluntary wavier of his rights in his guilty plea. Goodrum also argues that his guilty plea was based on false and improper government promises that his status would not be enhanced if he pleaded guilty. Finally, Goodrum contends that, in light of *United States v. Booker*, 125 S.Ct. 738 (2005), his sentence presents a Sixth Amendment violation because the district court believed it was bound by the Federal Sentencing Guidelines. The government argues that Robinson's argument, that he was improperly sentenced as a career offender, and Goodrum's arguments, that his plea was not voluntary and that he was improperly sentenced, are barred by a valid waiver of appellate rights.

A defendant in a criminal case may waive the right to appeal, as long as the waiver is knowing and voluntary. *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir.2001); *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir.1995). A knowing and voluntary waiver of a right to appeal contained in a plea agreement is presumptively valid and will preclude review of an issue on appeal. *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996); *United States v. Allison*, 59 F.3d 43, 46 (6th Cir.1995). Here, the plea agreements specifically provided that Robinson and Goodrum agreed to waive their right to appeal their respective sentences. J.A. at 35, 46. Both Robinson and Goodrum seek to circumvent the waiver by arguing that their pleas were not entered into "knowingly, intelligently, and voluntarily." *Davila v. United States*, 258 F.3d 448, 452 (6th Cir. 2001). The waivers specifically state, however, that Robinson and Goodrum waived the right to appeal the "voluntary nature of the plea." J.A. at 35, 46.

The waiver of the right to appeal the voluntary nature of the plea notwithstanding, Robinson and Goodrum still cannot demonstrate that their pleas were involuntary. At the plea hearing, the appellate waiver provisions were explicitly explained by the district court and acknowledged by Robinson and Goodrum respectively. The court determines the validity of a plea under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970). The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of a guilty plea. *Id.* at 755. The record should reflect a full understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among the alternatives. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

At Robinson's plea hearing, the district court extensively and carefully reviewed with Robinson the rights he was waiving and the maximum penalty he faced under the applicable statute, including the length of imprisonment. J.A. at 158-59. After the district court informed Robinson of his rights and the potential penalties, Robinson expressly acknowledged his guilt. Thus, the record reflects that Robinson understood the rights that he was waiving, and that he understood the potential penalties associated with his crime. Specifically, the plea agreement expressly contemplated the likelihood of Robinson being sentenced as a career offender and, at the guilty plea hearing, the district court explained to Robinson that he needed to weigh the sentencing range of 210 to 262 months against all of the counts upon which he had been indicted and the fact that some of them carry possible life sentences due to his prior drug convictions. Robinson acknowledged that he understood his plea agreement and understood that he was waiving his right to appeal and to

collaterally attack his sentence under 28 U.S.C. § 2255. Therefore, Robinson knowingly, intelligently, and voluntarily waived his right to appeal.

Each of the cases cited by Robinson to demonstrate that his plea agreement was not voluntary are inapposite. In *United States v. Baty*, 980 F.2d 977 (5th Cir. 1992), Baty challenged her sentence for escaping from federal custody. The court found that, despite the plea agreement waiving the right to appeal, there was no "satisfactory explanation" of the consequences of her waiver. Thus, the court determined that the waiver of the right to appeal was ineffective. In that case, however, Baty specifically asked for an explanation of her rights and the court did not give her one. That is not the case here. The district court explained the consequences of the plea to Robinson as it's required to do under Rule 11 of Federal Rules of Criminal Procedure, J.A. at 158-59, and did not refuse a further explanation.

In *United States v. Bushert*, 977 F.2d 1343 (11th Cir. 1993), also cited by Robinson, the court held that a waiver of appeal was ineffective. In that case, the court explained that a review of the record did not indicate that Bushert understood the "full significance" of his appeal waiver. There, unlike in the present case, the defendant did not waive the right to contest that the plea was knowing and voluntary.[1]

None of the cases cited by Robinson support the proposition that a defendant who waived the right to appeal his sentence and the right to appeal whether his plea was entered into voluntarily may still attack the voluntary nature of his plea in order to get to the merits of what he alleges are

---

[1] Robinson also cites *United States v. Wessell*, 936 F.2d 165 (4th Cir. 1991), in support of his claim that his waiver was not knowing and voluntary. In that case, unlike this case, the defendant was not questioned about the waiver at all.

sentencing errors. Further, the record reflects that Robinson was informed of the rights that he was waiving. Thus, there is no support in the record for Robinson's claim that his plea was involuntary and that the merits of his claim should be reached.

At Goodrum's sentencing hearing, the district court went over the plea agreement with the same level of attention to detail as was done at Robinson's plea hearing. J.A. at 125-26. Goodrum argues that he involuntarily entered into his guilty plea because it was based upon a promise by the government that he would not be "enhanced" if he cooperated with law enforcement authorities. The plea agreement, however, specifically stated that his sentence would be enhanced, both because he qualified as a career offender and because the government had filed a notice of enhancement alleging a single prior conviction. In addition to waiving his right to appeal his conviction and sentence, including the voluntary nature of his plea, Goodrum did not question the "enhancement" of his sentence at the plea hearing. His plea agreement acknowledged that "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty." J.A. at 43. Goodrum raised the issue of the alleged promises for the first time at sentencing. He then claimed that various law enforcement officers had assured him that he would not be "enhanced" if he cooperated. Goodrum's claim, however, was not substantiated by any evidence. He did not know the names of the officers alleged to have made the promise, and his prior attorney did not appear at the hearing to substantiate his claim.

As part of Goodrum's plea agreement, the government refrained from filing a second prior conviction against Goodrum, which would have resulted in life in prison. This fact weighs against

Goodrum's claim that the government misrepresented that he would not be enhanced if he cooperated. Not only did the government decline to pursue the second enhancement that would have required life in prison, but it also recommended a substantial assistance departure. Thus, Goodrum's claim that he must be re-sentenced because his plea was not voluntary fails.

As the court finds that Robinson's and Goodrum's plea agreements constitute a valid waiver of their appellate rights, the court need not address Robinson's claims regarding his alleged sentencing errors and ineffective assistance of counsel. Likewise, Goodrum's claim that his sentence violated the Sixth Amendment pursuant to *United States v. Booker*, *supra*, is also precluded the waiver of his right to appeal. *See United States v. Yoon*, No. 03-5875, ___ F.3d ___, 2005 WL 427883, *5 (6th Cir. Feb. 24, 2005).

## IV.     Conclusion

For the foregoing reasons, we **AFFIRM** the district court's sentences of Robinson and Goodrum.c