NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0505n.06

Case No. 22-6033

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 06, 2023
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA, )
      Plaintiff - Appellee, )
  )
v. )
  )
RANDOLYN SMITH, )
      Defendant - Appellant. )
  )
  )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: CLAY, GIBBONS, and GRIFFIN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Randolyn Smith contends that he was incompetent to plead guilty to charges arising from his involvement in a double-homicide robbery. Because the trial court adequately assessed Smith's competency before and during his plea hearing, we affirm.

I.

In February 2016, Randolyn Smith and his co-defendant killed two men by shooting them in the back of the head from close range. The pair then robbed their victims of cash and marijuana.

Three years after the killing, the government indicted Smith for (1) Hobbs Act robbery and (2) brandishing and discharging a firearm in furtherance thereof. Smith pled not guilty and subsequently moved for a mental competency evaluation pursuant to 18 U.S.C. § 4241(a). The district court granted the motion, and Smith underwent three psychological evaluations over the following year-and-a-half. These evaluations returned "conflicting" results, with two finding that

Smith suffered from mental defects affecting his competency and the third reaching the opposite result. DE 122, Order for Supplemental Mental Evaluation, Page ID 156. After hearing testimony from two of the three examining psychologists at a September 2021 competency hearing, the district court ordered a fourth evaluation. The fourth psychological exam opined that Smith was competent to stand trial under the standard set forth in § 4241(a).

On the heels of this fourth evaluation, Smith gave notice that he no longer intended to challenge his competency to stand trial. The district court nonetheless conducted a second competency hearing in February 2022. Based on Smith's withdrawal of his competency challenge and the results of the latest psychological evaluation, the court deemed Smith "competent to go forward" with trial. DE 212, Second Competency Hr'g. Tr., Page ID 659.

A few months later, Smith changed his plea to "guilty." At the change-of-plea hearing, the district court conducted an involved and lengthy plea colloquy. Smith confirmed that the government's factual recitation accurately reflected what happened, and he further attested that he voluntarily chose to plead guilty because he was in fact guilty of the crimes alleged. The district court observed that Smith was "tracking very well" with the court's colloquy and was offering "timely and on point" responses to the court's questions. DE 213, Change of Plea Hr'g Tr., Page ID 681. Smith's counsel also reiterated his confidence in his client's competency. The court ultimately accepted Smith's plea.

At his subsequent sentencing, Smith received consecutive sentences of 240 months' imprisonment on the robbery count and 120 months' imprisonment on the firearm count. During the hearing, Smith's counsel again underscored his belief that Smith remained competent to understand the proceedings against him. Smith then timely appealed, challenging the validity of his guilty plea as not knowingly and voluntarily given.

II.

A criminal defendant may plead guilty only if he "is competent to stand trial" and the trial court "satisf[ies] itself that the [defendant's] waiver of his constitutional rights is knowing and voluntary." *Godinez v. Moran*, 509 U.S. 389, 400 (1993). A defendant is competent if he maintains "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and . . . 'a rational as well as factual understanding of the proceedings against him.'" *Id.* at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Under § 4241(a), "the district court has not only the prerogative, but the duty, to inquire into a defendant's competency whenever there is 'reasonable cause to believe' that the defendant is incompetent to stand trial." *United States v. Denkins*, 367 F.3d 537, 545 (6th Cir. 2004) (quoting *United States v. White*, 887 F.2d 705, 709 (6th Cir. 1989)).

Where the defendant fails to object to the plea colloquy, we review the district court's competency determination for plain error. *United States v. Pitts*, 997 F.3d 688, 700 (6th Cir. 2021). To demonstrate plain error, Smith bears the burden to show "that there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* at 697 (quoting *United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007)). Upon such a showing, we may exercise our discretion to notice the forfeited error, "but only if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings." *Id.* (quoting *Lalonde*, 509 F.3d at 759).

III.

As a preliminary matter, the government contends that Smith, by virtue of his "Notice of Non-Contest Regarding Competency" and his counsel's repeated attestations to his competency, has waived his right to appeal his plea on competency grounds. But we have held that

in cases where a defendant argues that his plea was not knowing or voluntary . . . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of [the defendant's] claim challenges the very validity of the waiver itself.

*In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *see also United States v. Brown*, No. 22-3671, 2023 WL 4564766, at *2 (6th Cir. July 17, 2023) ("A challenge to the knowing and voluntary nature of one's plea is inherently a challenge to one's waiver of appellate rights."); *United States v. Mallory*, 494 F. App'x 383, 384 (4th Cir. 2012) ("[A] defendant cannot waive a colorable claim that his plea was not knowing or voluntary."); *but see Goodrum v. United States*, 126 F. App'x 713, 715–16 (6th Cir. 2005) (enforcing the defendants' explicit waiver of their right to appeal the knowing and voluntary nature of their guilty pleas). Here, although the government predicates its waiver argument on Smith's "Notice of Non-Contest Regarding Competency" rather than, as is more typical, the waiver of appellate rights contained in Smith's plea agreement, Smith's substantive argument nonetheless "challenges the very validity of the waiver itself," because if Smith was incompetent to plead guilty, then he was by equal measure incompetent to waive his right to level a competency objection. *In re Acosta*, 480 F.3d at 422. In such circumstances, procedure and substance converge, and the government's waiver argument "stands or falls with the validity of the [defendant's plea]." *United States v. Ataya*, 884 F.3d 318, 322 (6th Cir. 2018). We therefore turn to the merits of Smith's appeal.

Our review of the record gives us little reason to doubt Smith's competency to stand trial at the time he pled guilty, and we therefore cannot say that the district court plainly erred in finding that his plea was knowingly and voluntarily given. We reach this conclusion based on three observations.

First, the record demonstrates that the district court made a thorough inquiry into Smith's competency prior to his change of plea and reasonably concluded, based on the results of that

inquiry, that Smith was competent to stand trial. When Smith raised competency concerns after pleading not guilty, the court appropriately ordered a competency evaluation pursuant to its obligations under § 4241(a). And when two Bureau of Prisons psychologists disagreed as to Smith's competency, the court rightly granted Smith's request to engage a third psychologist for further evaluation. Upon reading the three psychological reports and hearing the conflicting testimony of two of the three psychologists, the district court found methodological "strengths" on both sides. DE 122, Order for Suppl. Mental Evaluation, Page ID 154. But the court further observed that it still lacked sufficient information, as all three psychologists had faced unusual or unanticipated time constraints on their evaluations. Accordingly, the district court engaged in even further study of Smith's competency by ordering a fourth psychological exam. And only with the benefit of this fourth report — which opined that Smith's outward indications of incompetency, to the extent present, were the result of volitional, motivated behavior and further, that Smith proved competent under the standard expressed in § 4241(a) — did the district court conclude that Smith was competent to stand trial. This painstakingly thorough approach to evaluating Smith's competency bore all the hallmarks of reasoned decision-making, and the district court's ultimate decision to accept the results of the most recent and involved evaluation proved eminently reasonable. *See United States v. General*, 278 F.3d 389, 398 (4th Cir. 2002) (noting that a psychological evaluation was "entitled to significant weight" where it constituted "the most recent and comprehensive evaluation of [the defendant's] competency"); *see also United States v. Muriel-Cruz*, 412 F.3d 9, 13 (1st Cir. 2005) (same); *United States v. Collins*, 949 F.2d 921, 926 (7th Cir. 1991) ("The judge also was entitled to draw inferences from the psychiatric evaluations, the most recent and thorough of which determined Collins to be competent.") (internal citations omitted).

Second, although we hold that it did not constitute waiver of the issue, the district court was nevertheless entitled to place substantial weight in the opinion of Smith's counsel that Smith was competent to stand trial, particularly when that opinion amounted to a reversal of counsel's earlier position. *See United States v. Tucker*, 204 F. App'x 518, 520 (6th Cir. 2006) (noting that "[a]n attorney's opinion about his client's competency is one factor a court can consider" in deciding whether or not to hold a competency hearing); *see also Chichakly v. United States*, 926 F.2d 624, 634 (7th Cir. 1991) ("[A] trial judge is certainly entitled to rely upon representations from an attorney that his client is competent."). Smith's trial counsel made such a representation to the court on several occasions, and he provided detailed reasoning for his change in opinion. Specifically, he remarked that his client, who previously suffered from an "inability to communicate," had become "animated" and could communicate "just like anybody else would." DE 212, Second Competency Hr'g. Tr., Page ID 660. Moreover, Smith, who counsel recalled had previously "lost . . . a substantial amount of weight in a very small amount of time," now "look[ed] more nourished than he did" during their earlier interactions and could "engage in different questions" regarding "what was going to take place." *Id.*; DE 213, Change of Plea Hr'g Tr., Page ID 681. The second half of the § 4241(a) competency standard speaks to a defendant's capacity to "assist properly in his defense," and there is likely no individual better positioned to make that evaluation than defense counsel himself. *See Chichakly*, 926 F.2d at 634–35 ("Counsel for a defendant, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings and assist counsel with his defense.") (quoting *United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 500 (7th Cir. 1982)). Accordingly, defense counsel's renewed confidence in Smith's competency provided the district court with meaningful evidence

that Smith understood the proceedings against him and proved capable of assisting in his own defense.

Third, in light of the district court's years-long inquiry into Smith's competency, Smith's conduct at the change-of-plea hearing did not, as Smith now argues, give the district court "reasonable cause" to deem Smith incompetent at the time he pled guilty. *See* 18 U.S.C. § 4241(a). For one thing, the court's patient and thorough questioning produced ample evidence that Smith was alert, focused, and capable of understanding the proceedings against him on the day of his plea. Before the plea colloquy, Smith confirmed the spelling of his middle name, his birthplace, his age, his marital status, his daughter's age, his educational attainment, and the nature of his recent mental health treatment. Smith also acknowledged that he was appearing in court to plead guilty, and he confirmed that he and his lawyer had thoroughly discussed both the charges against him and the facts underlying the government's case. Smith's attentiveness then continued during the plea colloquy, when Smith acknowledged the rights that he would forfeit by pleading guilty, the potential penalties he faced, the agreements he had made with the government in his plea agreement, and the truth of the government's factual basis for his plea. And Smith then further confirmed his grasp on the proceedings by stating that he voluntarily chose to plead guilty because he was, in fact, guilty.

Smith contrasts these many cogent responses to the district court's questioning with his apparent confusion regarding a handful of the court's inquiries. But while the moments of confusion that Smith identifies indeed demonstrate that he initially misunderstood or failed to comprehend the question asked, the transcript by the same token demonstrates that Smith resolved these misunderstandings through immediate and effective consultation with his attorney. *See United States v. Shepherd*, 408 F. App'x 945, 948 (6th Cir. 2011) (defendant not incompetent to

plead guilty where he "took the opportunity to confer with counsel, both when prompted to do so by the district judge and on his own initiative"). And after each such instance, the court either repeated or rephrased the question asked, such that Smith would necessarily confirm that he understood the thrust of the court's question.

Smith resists this conclusion by again pointing to the two psychological evaluations that found him incompetent to stand trial, arguing that the court should have recognized Smith's "demonstrated confusion" as consistent with the findings in these two reports and re-inquired into Smith's competency. CA6 R. 34, Reply Br., at 3. But the change-of-plea hearing transcript makes clear that the district court remained attentive to Smith's demeanor, attentiveness, and, at bottom, competency throughout the plea hearing. At critical junctures in the plea colloquy, the district court repeated itself and asked the defendant, point blank, if he understood what was being asked of him. And at the conclusion of the hearing, the district court repeated its conclusion that, based on its observations, it found Smith "fully competent and capable of entering an informed plea." DE 213, Change of Plea Hr'g Tr., Page ID 719. Smith appears to argue that the court would have satisfied its duty under § 4241(a) by ordering yet another competency evaluation, but we struggle to grasp how an additional psychological report — one that would have necessarily contradicted two of the four reports already in the record — would have aided the district court's analysis. If the district court's meticulous and steadfast approach to assessing Smith's competency in this case constitutes plain error, then we strain to imagine what kind of approach would not.

IV.

Because Smith cannot demonstrate that the district court plainly erred in finding him competent to plead guilty, we affirm.