**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0250n.06
Filed: April 4, 2007

**No. 06-5370**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

CURTIS BYRD,

     Defendant-Appellant.

                                    /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE**

**BEFORE:** COLE, CLAY and GILMAN, Circuit Judges.

**CLAY, Circuit Judge.** Defendant, Curtis L. Byrd, appeals his conviction on one count of mail fraud, in violation of 18 U.S.C. § 1341, entered pursuant to a guilty plea. Specifically, Defendant claims that the district court failed to insure that a sufficient factual basis supported his plea of guilty, as required by Federal Rule of Criminal Procedure 11(b)(3). For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

On May 26, 2004, a grand jury sitting in the Western District of Tennessee indicted Defendant on two counts of mail fraud in violation of 18 U.S.C. § 1341, among other things. Defendant filed a motion to dismiss the indictment for lack of subject matter jurisdiction on

November 17, 2004. The government responded on November 29, 2004 and, on December 1, 2004, the district court entered an order denying Defendant's motion to dismiss.

According to the indictment, Defendant solicited James Scruggs and Ranelle Scruggs[1] to "pose as buyers of homes and motor vehicles in exchange for monetary payment." (J.A. at 26) Defendant prepared – and instructed James and Ranelle Scruggs to prepare – fraudulent home and vehicle loan applications. The loans were processed and approved using the Scruggs' names and social security numbers, and Defendant would subsequently lease the property to non-qualifying individuals for profit. The mail fraud charges arise from Defendant's use of the United States Postal Service on two separate occasions to send fraudulent documents: (1) on or about January 7, 2002, Defendant mailed a fraudulent home loan application; and (2) on approximately March 12, 2002, he mailed a fraudulent auto loan application.

On June 14, 2005, a federal grand jury returned a superseding indictment, charging Defendant once again with two counts of mail fraud for the same underlying offense. On November 16, 2005, Defendant pled guilty to Count 1 of the superseding indictment, which charged him with mail fraud in connection with the January 2002 home loan application. That same day, Defendant signed a formal plea agreement with the government and the district court conducted a change of plea hearing. In exchange for Defendant's guilty plea, the government agreed to dismiss the remaining count of the superseding indictment, as well as the May 26, 2004 indictment in its entirety. By its terms, Defendant's plea agreement waives his right to appeal in certain circumstances. Specifically, the plea agreement waives Defendant's right to collaterally attack his sentence (for example, by

---

[1]James and Ranelle Scruggs were named co-defendants, but do not partake in this appeal.

petitioning under § 2255), or to directly appeal on grounds of (1) the sentence imposed, (2) the manner in which the district court determined the sentence, and (3) the voluntariness of the guilty plea. However, the plea agreement expressly preserves Defendant's right to appeal on the basis of "prosecutorial misconduct, ineffective assistance of counsel, or jurisdictional issues." (J.A. at 33) The plea agreement does not set forth the elements of mail fraud, nor does it provide a written description of the facts underlying the plea.

At the November 16 plea hearing, the district court advised Defendant of his right to a trial and the consequences of a guilty plea, and inquired into the voluntariness of his guilty plea. The district judge reviewed the charges contained in Count 1 with Defendant, summarizing the allegations contained therein with great detail. Thereafter, the district judge asked Defendant whether he understood the charges against him, and Defendant replied in the affirmative. Additionally, the district court asked the prosecutor to set forth the factual basis for Defendant's guilty plea. The prosecutor responded:

> Your Honor, had we gone forward with the proof in this case, it would have shown beginning on or about January 7th, 2002, here in the Western District of Tennessee, the Defendant [] being aided, counseled and induced by or with James and Ranelle Scruggs, both codefendants in this case, did device [sic] a scheme to obtain money and property by means of false and fraudulent pretenses. The defendant, Mr. Byrd, did prepare a fraudulent loan mortgage, fraudulent mortgage loan application for codefendants James and Ranelle Scruggs for property 5015 Peach Blossom Cove, Memphis, Tennessee, with the aid of others unknown to the grand jury. The defendant interviewed Mr. and Mrs. Scruggs and was aware that Falls [sic] information was provided when applying for the loan. Specifically Ranelle Scruggs' employment and income were false and/or inflated to ensure qualification. Bomac Mortgage Holdings did rely on the false information on the loan application provided to it by the defendant, Mr. Byrd. On or about January 9, 2002, the defendant, Mr. Byrd, did knowingly place or cause to be placed in a post office box or authorized depository for mail matter to be sent and delivered by the United States post office and did knowingly deposit and cause to be deposited and sent and delivered by

3

private and commercial mail carrier a letter containing the codefendants' Uniform Residential Loan application for the above property mentioned, 5015 Peach Blossom Cove, Memphis, Tennessee, to Bomac Mortgage Holdings in Dallas, Texas.

(J.A. at 66-68) Defendant stipulated to this factual basis. The district court ultimately accepted Defendant's guilty plea. Defendant's counsel made no objections at the time of hearing.

On February 24, 2006, the district court entered its judgment, finding Defendant guilty pursuant to the plea agreement and sentencing him to one year and one month imprisonment, followed by three years of supervised release. In so doing, the district court relied on a presentence report ("PSR") prepared in February 2006.[2] The PSR details at some length the conduct underlying the offense. Defendant did not object to the PSR's representation of his conduct, but only to the loss calculations contained therein.

Defendant timely appealed his conviction. Along with its brief on appeal, the government filed a motion to dismiss Defendant's appeal, asserting that Defendant waived his appellate rights. A panel of this Court denied the government's motion to dismiss in an Order filed October 31, 2006, finding that Defendant's unconditional guilty plea did not preclude an appeal based on the district court's asserted failure to comply with Fed. R. Crim. P. 11. (Order, No. 06-5370 (6th Cir. Oct. 31, 2006))

## DISCUSSION

**WHETHER THE DISTRICT COURT PLAINLY ERRED BY FAILING TO DETERMINE THE FACTUAL BASIS FOR THE GUILTY PLEA AS REQUIRED BY FED. R. CRIM. P. 11(b)(3).**

---

[2]Because Volumes 1 and 2 of the Joint Appendix are not consecutively paginated, we cite Volume 2 of the J.A. as "Def.'s PSR" throughout this opinion.

## A.      Standard of Review

We typically review a defendant's challenge to the factual basis for his guilty plea under an abuse of discretion standard. *United States v. Bennett*, 291 F.3d 888, 894 (6th Cir. 2002). However, a defendant who fails to object on Rule 11 grounds before the district court must demonstrate plain error. *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Murdock*, 398 F.3d 491, 496-97 (6th Cir. 2005); *United States v. Robinson*, 455 F.3d 602, 610 (6th Cir. 2006).

## B.      Plea Agreement's Waiver Provisions

The government primarily argues that we lack jurisdiction to consider Defendant's appeal because Defendant waived "all appellate rights except ineffective assistance of counsel, prosecutorial misconduct, and jurisdictional issues." (Pl.'s Br. at 9) However, a panel of this Court previously considered the government's motion to dismiss, filed simultaneously with its brief on appeal, and this very issue. The panel found that Defendant's unconditional guilty plea did not preclude an appeal based on the district court's asserted failure to comply with Fed. R. Crim. P. 11. (Order, No. 06-5370 (6th Cir. Oct. 31, 2006)) Therein, this Court stated: "It is well established that a defendant who has entered an unconditional guilty plea may appeal claims that the district court failed to comply with the requirements of Fed. R. Crim. P. 11." (*Id.* (citing *McCarthy v. United States*, 394 U.S. 459 (1969); *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004); *United States v. Tunning*, 69 F.3d 107, 112-15 (6th Cir. 1995); *United States v. Van Buren*, 804 F.2d 888, 890-91 (6th Cir. 1986)) Accordingly, we examine Defendant's challenge on the merits.[3]

_____

[3]Although unnecessary in this case, we feel compelled to note that the government reads too broadly our ruling in *United States v. McGilvery*, 403 F.3d 361 (6th Cir. 2005). We recently stressed "the distinction between appeals . . . that simply relate to issues a defendant has validly agreed not

### C.    Rule 11(b)(3)'s Requirement of a Sufficient Factual Basis

On appeal, Defendant asserts that the district court failed to insure that a sufficient factual basis supported his guilty plea. Specifically, Defendant argues that the factual basis did not establish that he used the mails for the purpose of executing the fraudulent scheme. We find that the district court properly discharged its role under Rule 11(b)(3).

A defendant appealing judgment on a guilty plea, but who failed to object to the plea colloquy before the district court, bears the burden of establishing plain error. *Vonn*, 535 U.S. at 59; *Murdock*, 398 F.3d at 496-97. Where the defendant failed to object below, as here, Rule 52(b) nevertheless enables courts to review plain errors "that affect[] substantial rights" of the defendant. *United States v. Olano*, 507 U.S. 725, 735 (1993). To succeed under plain error review, Defendant must prove (1) error, (2) the error is plain, (3) the error affects Defendant's substantial rights, and (4) it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Murdock*, 398 F.3d at 497-99; *see also Olano*, 507 U.S. at 732-35. "Error" for purposes of this inquiry occurs when "a legal rule [i]s violated during the district court proceedings." *Id.* at 733-34. Defendant here asserts that the district court violated the legal rule laid out in Federal Rule of Criminal Procedure 11(b)(3). We disagree and find that Defendant cannot establish error.

---

to appeal or attack collaterally, from those that go to the very validity of a guilty plea." *In re Acosta*, — F.3d —, 2007 WL 777506, at *1 (6th Cir. 2007). Here, Defendant attacks the validity of his guilty plea under Federal Rule of Criminal Procedure 11. This is not a challenge that falls within the scope of the appellate waiver provision in his plea agreement and, accordingly, this is not a case susceptible to disposition on a motion to dismiss.

Pursuant to Rule 11(b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."[4]  When faced with a challenge to the sufficiency of the factual basis for a defendant's guilty plea, we consider "whether the record of the plea hearing . . . establishes a factual basis for all the elements of" the offense pled. *Tunning*, 69 F.3d at 112.  In conducting this inquiry, we look not only to a defendant's own statements at the plea hearing, but also to witness testimony and the remarks of prosecutors on the record.  *Id*.; *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir. 1988).  The defendant's statements may be in narrative form, or merely questions with affirmative answers.  *United States v. Baez*, 87 F.3d 805, 809 (6th Cir. 1996).  What is more, "when a plea agreement's written description of the essential facts underlying the charge supports a finding of guilty, the defendant's express acknowledgment of the accuracy of the agreement's provisions satisfies the [factual basis] requirement."  *Baez*, 87 F.3d at 810.  Furthermore, because a sufficient factual basis need be present only by the time of sentencing, the defendant's PSR, as well as testimony proffered at sentencing, may also be taken to establish the factual basis.  *United States v. Bennett*, 291 F.3d 888, 894, 896-97 (6th Cir. 2002); *see also United States v. Cody*, 438 F.2d 287, 289 (8th Cir. 1971) (citing *McCarthy*, 394 U.S. at 463 n.6) (noting that the Advisory Committee on Criminal Rules suggested, among other things, examining the PSR to

---

[4]When the Advisory Committee revised the rules in 2002, it reorganized and rewrote parts of Rule 11 for purely stylistic reasons.  Among these changes, the Committee altered the focus of Rule 11(f), and moved the requirement for a factual basis to a rephrased, yet substantively consistent, provision at Rule 11(b)(3).  *See* Fed. R. Crim. P. 11 advisory committee's note (2002) ("The language of Rule 11 has been amended and reorganized as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except as noted below.").  Accordingly, we rely upon precedent interpreting both the pre-2002 amendment Rule 11(f) and post-amendment Rule 11(b)(3).

determine if a factual basis exists). Finally, "[w]here the crime is easily understood, several courts have held that a reading of the indictment . . . and an admission by the defendant, is sufficient to establish a factual basis under Rule 11." *United States v. Williams*, 176 F.3d 301, 313 (6th Cir. 1999) (quoting *United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir. 1990)) (internal quotation marks omitted); *see also United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir. 1986) ("Where the charge is more complex, and uses concepts or terms that may be foreign to a lay person, . . . Rule 11 may require more than that the indictment be read."); *Valdez*, 362 F.3d at 910.

Here, Defendant pled guilty to Count 1 for mail fraud, a crime in violation of 18 U.S.C. § 1341. To sustain a conviction under this section,[5] the government typically must prove "(1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the scheme." *United States v. Castile*, 795 F.2d 1273, 1277-78 (6th Cir. 1986); *see also United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997). "A determination of whether uses of the mail were 'for the purpose of executing' the fraud involves an inquiry into whether the 'mailings were sufficiently

---

[5]In pertinent part, the statute provides:

> Whoever, having devised . . . any scheme or artifice . . . for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, . . . shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341.

closely related to [the] scheme.'" *Castile*, 795 F.2d at 1278 (quoting *United States v. Maze*, 414 U.S. 395, 399 (1974)) (alterations in original). "In order for a mailing to be in furtherance of a scheme, the scheme's completion or the prevention of its detection must have depended in some way on the charged mailing." *Castile*, 795 F.2d at 1278 (collecting cases). That is to say, the *thing mailed*, and not necessarily the use of the mail, must be integral to the fraudulent scheme. *Id.* (citation omitted); *see also Maze*, 414 U.S. at 400. Moreover, the mailing must promote the scheme, for example, by enabling its "completion or . . . prevent[ing] . . . its detection," and mailings subsequent to the scheme's "fruition" do not suffice. *Castile*, 795 F.2d at 1279; *see also Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) ("It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'") (internal quotation marks omitted); *United States v. Merklinger*, 16 F.3d 670, 679 (6th Cir. 1994) (finding mailings "in furtherance of [an] investigation . . . to defeat any fraudulent scheme" not in furtherance of that scheme); *Frost*, 125 F.3d at 358.

Here, the district judge reviewed Count 1 of the indictment on the plea hearing record, including that portion of the charge alleging that Defendant used "a private and commercial interstate carrier" to deliver a fraudulent Uniform Residential Loan application to Bomac Mortgage Holdings. (J.A. at 58-59) When the district judge subsequently asked Defendant whether he understood the charges against him, Defendant replied that he understood. Additionally, the prosecution recited, and Defendant stipulated to, the following factual basis, in relevant part:

> Your Honor, had we gone forward with the proof in this case, it would have shown . . . [that] [o]n or about January 9, 2002, the defendant, Mr. Byrd, did knowingly place or cause to be placed in a post office box or authorized depository for mail matter to be sent and delivered by the United States post office and did knowingly deposit and cause to be deposited and sent and delivered by private and commercial mail carrier *a letter containing the codefendants' Uniform Residential Loan*

*application for the above property mentioned*, 5015 Peach Blossom Cove, Memphis, Tennessee, to Bomac Mortgage Holdings in Dallas, Texas.

(J.A. at 66-68, 70) (emphasis added).  Later, Defendant again acknowledged his guilt under Count 1 of the indictment.  According to Defendant's PSR, the U.S. Postal Inspector had gathered evidence in support of the facts underlying the indictment, as well as the prosecutor's recitation, during an investigation of Defendant following a prior arrest for mail fraud.[6]  No witnesses testified at the hearing.  Nor did Defendant independently testify to the underlying facts, aside from his affirmative responses to the court.

We find that the prosecutor's statement and Defendant's responses to the district judge meet with Rule 11(b)(3)'s requirement of a sufficient factual basis for the offenses pled.  Defendant admitted to mailing a fraudulent Uniform Residential Loan application for the 5015 Peach Blossom Cove property.  That loan application very squarely constitutes an integral part of the scheme to defraud mortgage lenders.  The application lays the foundation for the entire fraudulent transaction and, accordingly, "the scheme's completion . . . depended in some way on the charged mailing." *See Castile*, 795 F.2d at 1278; *see also Maze*, 414 U.S. at 400; *Schmuck*, 489 U.S. at 710-11. Furthermore, as compared to complex conspiracy charges, the crime of mail fraud is easily understood and Defendant's indictment employs concepts and terms accessible to the layperson – at least inasmuch as it describes the thing mailed and its role in the scheme. *See Williams*, 176 F.3d

---

[6]According to the PSR, Defendant "had been originally arrested on the mail fraud charges on December 28, 2001 and released on a $5,000 secured bond.  [Defendant] remained out on bond pending sentencing in the case."  (Def.'s PSR at 4)

at 313. The district court's reading of the indictment and Defendant's subsequent admission may be taken to further support a finding that a sufficient factual basis existed under Rule 11(b)(3).

Defendant relies heavily on this Court's opinion in *Tunning*, citing it for the proposition that "if the government undertakes to establish the factual basis by reciting what facts it would have proven at trial, the prosecutor must also identify the evidence it has to prove those facts." (Def.'s Br. at 22 (citing *Tunning*, 69 F.3d at 114)) However, Defendant misleadingly omits the crux of this Court's holding in *Tunning*:

> [W]here, as in this case, the defendant pleads guilty *but refuses to admit to conduct that demonstrates a factual basis for the plea*, if the government undertakes to establish the factual basis by reciting what facts it would have proven at trial, the prosecutor must also identify the evidence it has to prove those facts.

*Tunning*, 69 F.3d at 114 (emphasis added). Defendant here stipulated to the prosecutor's recitation of proof. Accordingly, the district court did not err in accepting Defendant's plea. By extension, Defendant cannot meet the even heavier burden of demonstrating plain error.

## CONCLUSION

For the foregoing reasons, we **AFFIRM.**