NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0335n.06

Case No. 24-5791

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 09, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| JEREMIAH OTIS | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: THAPAR, NALBANDIAN, and READLER, Circuit Judges.

READLER, Circuit Judge. Jeremiah Otis sold three firearms and three fentanyl pills to undercover agents. Based upon that conduct, Otis pleaded guilty to carrying a firearm during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). The district court sentenced him to 60 months in prison.

On appeal, Otis claims that his guilty plea was neither knowing nor voluntary, and thereby ran afoul of the Fifth Amendment. He also claims that he received ineffective assistance of counsel in the course of pleading guilty, in violation of the Sixth Amendment. We affirm.

I.

Jeremiah Otis made a living selling guns and drugs in Memphis, Tennessee. His efforts eventually caught the attention of the federal government. The Bureau of Alcohol, Tobacco, Firearms and Explosives sent undercover agents to conduct a sting. Posing as arms buyers, the

agents arranged a meeting at a local restaurant. Once in the eatery's parking lot, Otis stepped out of his truck, walked to a nearby car, and got inside. There, Otis sold the agents two pistols, one rifle, and three fentanyl pills, with Otis receiving $2,700 in return.

A federal grand jury later indicted Otis on three counts of carrying a firearm during and in relation to a drug trafficking crime, and one count of distributing fentanyl. Eventually, Otis and the government struck a deal. Otis agreed to plead guilty to one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). In exchange, the government agreed to dismiss the remaining charges and recommend a sentence reduction for acceptance of responsibility.

To ensure that Otis understood his plea agreement, the district court held a plea hearing. At the hearing, the court asked Otis whether he understood the terms of his plea agreement, whether he discussed the agreement with his lawyer, and whether he understood the consequences of his agreement. Yes, yes, and yes, Otis responded. The court then explained it would have to sentence Otis to at least 60 months in prison, the mandatory minimum. 18 U.S.C. § 924(c)(1)(A)(i). Otis said he understood. The court accepted the plea agreement and sentenced Otis to 60 months.

## II.

Otis challenges his plea on two grounds. Each gets a turn.

*Knowing and Voluntary Plea*. Otis first claims that his plea was neither knowing nor voluntary. That Otis did not raise this issue before the district court informs our review. While Otis can still bring this kind of claim on direct appeal, *In re Acosta*, 480 F.3d 421, 422 & n.2 (6th Cir. 2007), his failure to preserve the matter in district court means we review for plain error, *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020).

The Fifth Amendment's Due Process Clause allows district courts to accept a criminal defendant's guilty plea if, but only if, the defendant enters the agreement in a "knowing and voluntary" manner. *Parke v. Raley*, 506 U.S. 20, 28 (1992). A defendant does so if he understands the agreement's "circumstances" and "consequences" and signs the agreement free from coercion. *Brady v. United States*, 397 U.S. 742, 748, 750 (1970).

Federal Rule of Criminal Procedure 11(b) plays a role in achieving this constitutional guarantee: it requires district courts to hold plea hearings. Fed. R. Crim. P. 11(b). At the hearings, district courts customarily ask a defendant several questions, with the goal of determining that the defendant understands, among other things, the "right to a jury trial," the "nature of each" offense to which he is pleading guilty, and "any mandatory minimum" for his offense. *Id.* 11(b)(1)(C), (G), (I). The court also determines whether a defendant has made a "voluntary" plea free from coercive tactics by the government. *Id.* 11(b)(2). The transcript of a well-conducted plea hearing presents a "formidable barrier" for a defendant trying to challenge on appeal the knowing and voluntary nature of a plea. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

We see no error in the district court's acceptance of Otis's guilty plea. Begin with the fact that the language of Otis's "written plea agreement" suggests that he knowingly and voluntarily pleaded guilty. *United States v. Ellis*, 115 F.4th 497, 501 (6th Cir. 2024) (quotation omitted). In his signed plea, Otis indicated that he was "in fact guilty of" carrying a firearm during and in relation to a drug trafficking crime and, further, that he was "freely, knowingly, and voluntarily" entering the agreement.

Lest there be any doubt, the transcript of Otis's plea hearing confirms that he entered a knowing and voluntary plea. During his colloquy with the district court, Otis said that he could read and write. Further, he explained, he went over his plea "line by line" with his lawyer,

3

confirming that he understood the agreement's terms.  Otis also told the district court that he was not "under the influence" of any drug that could affect his ability to plead guilty.

Otis then made clear that he understood the charge against him.  He admitted that he sold three guns and three fentanyl pills to federal agents.  He agreed that these historical facts established the elements of the crime charged, *i.e.*, he carried a firearm during and in relation to a drug trafficking crime.  And he acknowledged that he faced a 60-month mandatory minimum.

Otis then confirmed that the government was not coercing him to accept the plea, reiterating his interest in pleading guilty.  In so doing, he expressly recognized the consequences of that decision.  He said he was familiar with his constitutional right to a jury trial as well as the many associated rights (such as his right to testify).  He added that he understood he would "give up" those rights if he pleaded guilty.  Likewise, he acknowledged, because he was pleading guilty to a felony, he would lose certain rights once he left prison, including the right to vote and the right to sit on a jury.  On this record, the district court committed no error in concluding that Otis "freely, voluntarily, and knowingly" pleaded guilty.

Otis offers two counterarguments.  He first claims that his plea was unknowing and involuntary because the plea agreement contained "illusory" terms to his detriment, citing our holding in *United States v. Randolph*, 230 F.3d 243 (6th Cir. 2000).  *Randolph* involved a unique scenario where a defendant's plea agreement offered him no "benefit."  *Id.* at 250.  That is the rare case.  Here, on the other hand, both sides benefited from the agreement.  Otis pleaded guilty to a charge in his indictment.  In exchange, the government dropped the other three charges against him and agreed to recommend a sentencing reduction for acceptance of responsibility.

Otis next contends that his plea contravened Criminal Rule 11's requirement that the court "determine that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(3).  Again, we disagree.

4

By way of background, Rule 11's factual basis requirement, in practice, serves to make clear to both the court and the defendant that the latter's conduct actually falls within the contours of the charged offense, thereby helping ensure that the defendant enters a knowing and voluntary plea. *McCarthy v. United States*, 394 U.S. 459, 467 (1969). As a legal matter, the "factual basis" element is satisfied if there is "some evidence" that a defendant committed the offense. *United States v. McCreary-Redd*, 475 F.3d 718, 722 (6th Cir. 2007) (quotation omitted).

Here, the district court did not commit plain error in finding that Otis's plea agreement had a factual basis. The government offered "some evidence" that Otis carried a firearm during and in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). Otis sold three firearms and three fentanyl pills to undercover agents in a single transaction. Thus, he carried a firearm at some point in the course of (*during*) a drug trafficking crime; he also carried a firearm with respect to (*in relation to*) a drug trafficking crime, because the firearm had the potential to facilitate the drug sale. *United States v. Edwards*, No. 23-5007, 2025 WL 789558, at *6 (6th Cir. Mar. 12, 2025) (Readler, J., concurring) (defining the phrase "during and in relation to"); *United States v. Rivera*, 502 F. App'x 554, 556–58 (6th Cir. 2012) (holding a defendant carried a firearm during and in relation to a drug trafficking crime where he sold a gun and cocaine to someone); *see also United States v. Henry*, 819 F.3d 856, 864–67 (6th Cir. 2016) (applying *Rivera*'s holding for the purposes of a sentencing enhancement).

*Ineffective assistance.* In addition to arguing that his plea was unknowing and involuntary, Otis claims that his trial attorney provided constitutionally ineffective assistance in advising him to accept his plea. Otis has the right to bring this kind of ineffective assistance claim on direct appeal even though he did not preserve it in his plea agreement. *In re Acosta*, 480 F.3d at 422 & n.2. But the claim is nonetheless premature. We customarily do not allow criminal defendants to

raise ineffective assistance of trial counsel claims on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003). By and large, we require defendants to wait and raise these claims in post-conviction proceedings under 28 U.S.C. § 2255. Often, that is to their benefit, as a separate collateral proceeding allows defendants the opportunity to develop a factual record that may support their claim. *Id.* We see no good reason to depart from this practice today.

*       *       *       *       *

We affirm the district court's judgment.